FILED
At Albuquerque NM

MAR 2 6 2014

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 14-922JB |
| | ) | |
| vs. | ) | Count 1: 18 U.S.C. § 1349: |
| | ) | Conspiracy |
| **JASONN GONZALES** and | ) | |
| **GERALD ARCHULETA,** | ) | Counts 2 - 5: 18 U.S.C. § 1341: Mail |
| | ) | Fraud and 18 U.S.C. § 2: Aiding and |
| Defendants. | ) | Abetting |
| | ) | |
| | ) | Count 6: 18 U.S. C. § 1028A: |
| | ) | Aggravated Identity Theft |

INDICTMENT

Introduction

1.    The Social Security Act of 1935 (Act) created the federal and state

Unemployment Insurance System, which is designed to provide benefits to persons out of work

through no fault of their own.  The purpose of the Act is to lessen the effects of unemployment

through payments made directly to laid-off workers (claimants) on a weekly basis while the

claimants seek employment.  The unemployment insurance (UI) program is administered on

behalf of the federal government by state workforce agencies in each state.  UI benefits are

funded through a tax on wages reported to the state workforce agencies by employers.  An

employer files with the appropriate state workforce agency, generally providing, among other

things, the name, address, and owner of the company; and the names, social security numbers

and wages of the company's employees.  The employer thereafter files quarterly reports and pays

employment taxes as required.

2.      The New Mexico Department of Workforce Solutions (NMDWS) is the agency responsible for administering the UI program in New Mexico.  The amount of weekly UI benefits paid to a claimant is based on the claimant's earnings reported by the claimant's employer for the first four out of five consecutive completed calendar quarters.  To receive UI benefits, a claimant must provide information to the NMDWS over the internet, including the claimant's name, mailing address, social security number, date of birth, gender, security question and security answer.  The system checks with the Social Security Administration to validate a claimant's identity.  The claimant establishes a User ID and password which are used in future log-ins to access the claim.  To determine whether a claimant qualifies, the NMDWS notifies the employer, giving the employer an opportunity to provide information on the reason for separation from employment.  Once the claim is approved, a claimant receives weekly benefits by certifying over the internet or by telephone that the claimant is actively seeking full-time or part-time employment (at least 20 hours per week).  To continue the claim and receipt of benefits, a claimant must access the UI account on a weekly basis, using the internet or telephone.  UI benefits can be paid to a claimant through a debit card account established through Wells Fargo Bank or Bank of America.  A debit card is sent to the claimant through the U.S. mail or private interstate carrier to the claimant's address as shown in the NMDWS records. The claimant can then withdraw UI benefits, using the debit card.

3.      The Texas Workforce Commission (TWC) is the agency responsible for administering the UI program in Texas.  The amount of weekly UI benefits paid to a claimant is based on the claimant's earnings reported by the claimant's employer for the past four out of five consecutive completed calendar quarters.  To receive UI benefits, a claimant can file over the internet and must inform the TWC of the claimant's name, mailing address, social security

number, date of birth, employer, and reason for separation. The claimant establishes a User ID and password which are used in future log-ins to access the claim. To determine whether a claimant qualifies, the TWC notifies the employer, giving the employer an opportunity to provide information on the reason for separation from employment. Once the claim is approved, a claimant receives weekly benefits by certifying over the internet or by telephone that the claimant is actively seeking full-time employment. To continue the claim and receipt of benefits, a claimant must access the UI account on a bi-weekly basis, using the internet or telephone. UI benefits can be paid to a claimant through a debit card account established through JP Morgan Chase Bank. A debit card is sent to the claimant through the U.S. mail or private interstate carrier to the claimant's address as shown in the TWC records. The claimant can then withdraw UI benefits, using the debit card.

      4.     The Colorado Department of Labor and Employment (CDLE) is the agency responsible for administering the UI program in Colorado. A claimant's eligibility for UI benefits is based on whether a claimant earned sufficient wages in the first four of the last five calendar quarters before the initial claim date, and that the claimant was not at fault for the job separation. After the initial claim is filed, documents are mailed to the claimant's address, including a verification of personal information form. To receive UI benefits, a claimant can file biweekly claims over the internet, using a PIN issued by the CDLE and the claimant's social security number. UI benefits are paid to a claimant through a debit card account established with JP Morgan Chase Bank. A Visa debit card (referred to as the Colorado Automated Payment (CAP) card) is sent to the claimant through the U.S. mail or private interstate carrier to the claimant's address as shown in the CDLE records. The claimant can then withdraw UI benefits, using the debit card.

Count 1

Paragraphs 1 through 4 of the Introduction, above, are hereby incorporated by reference as if fully set forth herein.

5.      In or about and between the year 2009 and May, 2012, both dates being approximate and inclusive, in Santa Fe and Rio Arriba Counties, in the District of New Mexico, and elsewhere, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, with others known and unknown to the Grand Jury, did knowingly and unlawfully combine, conspire, confederate, agree together and with each other, and acted interdependently to commit an offense against the United States, that is, causing to be mailed and causing to be delivered and causing to be received from the United States Postal Service, and any private and commercial interstate carrier, any document, matter and thing in furtherance of a scheme and artifice to defraud the New Mexico Department of Workforce Solutions (NMDWS), the Texas Workforce Commission (TWC), and the Colorado Department of Labor and Employment (CDLE) of money and property, and to obtain money and property by means of false and fraudulent pretenses, in violation of 18 U.S.C. §1341.

Manner and Means and Scheme to Defraud

6.      It was a part of the conspiracy and scheme to defraud that the defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, and others known and unknown to the Grand Jury, would, by fraudulent means, register non-existent companies with the NMDWS, the TWC and the CDLE, file quarterly reports for those companies which identified claimed employees and their claimed wages, and pay a minimum amount of employers' unemployment insurance tax.

4

7.    It was a further part of the conspiracy and scheme to defraud that the defendants provided names, dates of birth and social security numbers of the claimed employees to the NMDWS, the TWC and the CDLE without the knowledge or authorization of the claimed employees, who were real persons.

8.    It was a further part of the conspiracy and scheme to defraud that the defendants would knowingly and intentionally make claims for unemployment insurance benefits in the total potential payment amount of approximately $1,356,461 in the names of the claimed employees of the non-existent companies to the NMDWS, the TWC and the CDLE, without the knowledge or authorization of the claimed employees.

9.    It was a further part of the conspiracy and scheme to defraud that the defendants opened, and caused to be opened, Post Office (P.O.) boxes in New Mexico, Texas and Colorado, which they provided to the three state workforce agencies as the mailing addresses of the claimed employers and employees.

10.    It was a further part of the conspiracy and scheme to defraud that the defendants caused UI benefit payments to be made to the claimed employees from debit cards, which were mailed via the United States Postal Service and private commercial interstate carriers to the P.O. boxes that were provided to the three workforce agencies as the claimed employees' mailing addresses.

11.    It was a further part of the conspiracy and scheme to defraud that the defendants retrieved the debit cards from the P.O. boxes, and thereafter withdrew the UI benefits at various banks' automatic teller machines (ATMs) in the total amount of approximately $801,848.

Overt Acts

In furtherance of the conspiracy, and to affect the objects thereof, in the State and District of New Mexico, the defendants committed, among other overt acts, the following overt acts:

Overt Acts Pertaining to NMDWS

12.     On or about September 24, 2009, the defendant, **GERALD ARCHULETA,** opened P.O. Box 1356 in Alcalde, New Mexico, which was identified to the NMDWS as the mailing address of Rio Grande Tech Services, a non-existent company.

13.     On or about September 24, 2009, the defendant, **GERALD ARCHULETA,** opened P.O. Box 244 Santa Cruz, New Mexico, which was identified to the NMDWS as the mailing address of E.A., J. R. and J.D., all three claimed employees of Rio Grande Tech Services, a non-existent company.

14.     On or about November 1, 2009, the defendant, **JASONN GONZALES,** submitted a fraudulent claim for UI benefits in the name of E.A., a claimed employee of Rio Grande Tech Services, a non-existent company.

15.     On or about October 4, 2010, the defendant, **GERALD ARCHULETA,** opened P.O. Box 6231 in Santa Fe, New Mexico, which was identified to the NMDWS as the mailing address of Northern New Mexico Delivery Company, a non-existent company.

16.     On or about January 30, 2011, the defendant, **JASONN GONZALES,** submitted a fraudulent claim for UI benefits to NMDWS in the name of G.V., a claimed employee of Northern New Mexico Delivery Company, a non-existent company.

17.     On or about October 24, 2010, the defendant, **JASONN GONZALES,** submitted a fraudulent claim for UI benefits to NMDWS in the name of E.S., a claimed employee of MJ Janitorial Services, a non-existent company.

18.     On or about October 27, 2009, the defendant, **JASONN GONZALES,** caused to be mailed a Confirmation of Submission of New Hire Reports from NMDWS in the names of J.T. and A.G., claimed employees of Zia Computers, a non-existent company.

Overt Acts Pertaining to the TWC

19.     On or about January 15, 2012, the defendant, **JASONN GONZALES** registered Dallas Biological Discovery and Research ("DBDR"), a non-existent company, with the TWC.

20.     On or about October 1, 2010, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA,** caused P.O. Box 23631 to be opened in Santa Fe, New Mexico, identified to the TWC as the mailing address of J.M., a claimed employee of DBDR, a non-existent company.

21.     On or about October 4, 2010, the defendant, **GERALD ARCHULETA,** opened P.O. Box 6231 in Santa Fe, New Mexico, which was identified to the TWC as the mailing address of J.T., a claimed employee of DBDR, a non-existent company.

22.     On or about February 25, 2011, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA,** caused P.O. Box 43 to be opened in Embudo, New Mexico, which was identified to the TWC as the mailing address of DBDR, a non-existent company.

23.     On or about February 25, 2011, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA,** caused P.O. Box 242 to be opened in Alcalde, New Mexico, which was identified to the TWC as the mailing address of J.H., a claimed employee of DBDR, a non-existent company.

24.     On or about October 14, 2010, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA,** caused P.O. Box 5845 to be opened in Santa Fe, New Mexico,

which was identified to the TWC as the mailing address for C.B., a claimed employee of DBDR, non-existent company.

25.     On or about February 15, 2012, the defendant, **JASONN GONZALES**, submitted a fraudulent claim for UI benefits to the TWC in the name of C.B., a claimed employee of DBDR, a non-existent company.

26.     On or about February 16, 2012, the defendant, **JASONN GONZALES**, submitted a fraudulent claim for UI benefits to the TWC in the name of A.S., a claimed employee of DBDR, a non-existent company.

27.     On or about January 31, 2012, the defendant, **JASONN GONZALES,** withdrew $800 from a UI debit card issued by TWC in the name of M.M., a claimed employee of Arlington Computer Tech, a non-existent company, from a Chase ATM located in Arlington, TX.

28.     On or about January 31, 2012, the defendant, **GERALD ARCHULETA,** withdrew $800 from a UI debit card issued by TWC in the name of G.J., a claimed employee of Arlington  Computer Tech, a non-existent company, from a Chase ATM located in Arlington, TX.

<u>Overt Acts Pertaining to the CDLE</u>

29.     On or about October 4, 2010, defendant, **GERALD ARCHULETA**, opened P.O. Box 6231 in Santa Fe, New Mexico, which was identified to the CDLE as the mailing address of C.F., a claimed employee of A to Z Equipment, a non-existent company.

30.     On or about February 25, 2011, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, caused P.O. Box 43 to be opened in Embudo, New Mexico, which was identified to the CDLE as the mailing address of A to Z Equipment, a non-existent company.

31.     On or about February 16, 2012, the defendants, **JASONN GONZALES** and

**GERALD ARCHULETA**, caused P.O. Box 2403 to be opened in Espanola, New Mexico,

which was identified to the CDLE as the mailing address of S.L., a claimed employee of A to Z

Equipment, a non-existent company.

32.     On or about June 2, 2011, the defendant, **JASONN GONZALES**, submitted

fraudulent claims for UI benefits to the CDLE in the name of S.L., a claimed employee of A to Z

Equipment, a non-existent company.

33.     On or about June 5, 2011, the defendant, **JASONN GONZALES**, submitted

fraudulent claims for UI benefits to the CDLE in the name of L.P., a claimed employee of A to Z

Equipment, a non-existent company.

In violation of 18 U.S.C. § 1349.

Counts 2-5

Paragraphs 1- 4 of the Introduction of this Indictment, and Paragraphs 6 through 11 of

Count 1 above, are hereby incorporated by reference as if fully set forth herein.

34.     In or about and between the year 2009 and May 2012, both dates being

approximate and inclusive, in Santa Fe and Rio Arriba Counties, in the State and District of New

Mexico, and elsewhere, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA**,

and others known and unknown to the Grand Jury, with intent to defraud, devised a scheme and

artifice to defraud and for obtaining money and property under false and fraudulent pretenses, by

knowingly filing false claims for unemployment insurance in their names and the names of

others with the New Mexico Department of Workforce Solutions, the Texas Workforce

Commission, and the Colorado Department of Labor and Employment, in order to receive

unemployment insurance benefits in their names and the names of others to which they were not entitled.

35.     For the purpose of executing such scheme and artifice, on or about the dates listed below, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, caused debit cards and UI claim-related correspondence to be mailed, delivered and received from the United States Postal Service and private commercial interstate carriers, as follows:

| Count | On or About Date | Description | UI Claimant |
|---|---|---|---|
| 2 | January 25, 2011 | Debit Card acct. # 4675540378322227 mailed to P.O. Box 2403, Espanola, NM | T.S., a claimed employee of Northern New Mexico Delivery Company, a non-existent company |
| 3 | February 27, 2012 | Debit Card acct. # 4303269064066951 mailed to P.O. Box 242, Alcalde, NM | J.H., a claimed employee of DBDR, a non-existent company |
| 4 | May 21, 2012 | Determination of Payment of UI Benefits mailed by TWC to P.O. Box 242, Alcalde, NM | L.J., a claimed employee of DBDR, a non-existent company |
| 5 | May 22, 2012 | Statement of Account mailed by TWC to P.O. Box 242, Alcalde, NM | L.J., a claimed employee of DBDR, a non-existent company |

In violation of 18 U.S.C. §§ 1341 and 2.

### Count 6

36.     On or about November 7, 2010, in Santa Fe and Rio Arriba Counties, in the District of New Mexico, and elsewhere, the defendant, **JASONN GONZALES,** did knowingly use, possess and transfer, without lawful authority, a means of identification of another person;

10

that is, the defendant knowingly used, possessed and transferred L.W.'s name, Social Security Number, and date of birth, during and in relation to felony violations of 18 U.S.C. §§ 1341 and 1349; to wit, mail fraud and conspiracy to commit mail fraud; as charged in Count 1.

In violation of 18 U.S.C. §1028A.

## FORFEITURE ALLEGATION

Counts 1 through 5 of this Indictment are re-alleged and incorporated for the purpose of alleging forfeiture to the United States pursuant to U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

Upon conviction of any offense in violation of 18 U.S.C. § 1341, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, or a conspiracy to commit such offense.

Upon conviction of any offense in violation of 18 U.S.C. § 1349, the defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, or a conspiracy to commit such offense.

The property to be forfeited to the United States includes but is not limited to the following:

MONEY JUDGMENT

A sum of money equal to at least approximately $801,848 in U.S. currency, including any interest

accruing to the date of the judgment, representing the amount of money constituting or derived

from proceeds of the offense(s) in Counts 1 through 8, for which Defendants are jointly and

severally liable.

SUBSTITUTE ASSETS

     If any of the above described forfeitable property, as a result of any act or omission of

Defendants:

     A.  cannot be located upon exercise of due diligence;

     B.  has been transferred or sold to, or deposited with, a third person;

     C.  has been placed beyond the jurisdiction of the Court;

     D.  has been substantially diminished in value; or

     E.  has been commingled with other property which cannot be subdivided without

difficulty;

it is the intent of the United States, pursuant 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. §

982(b)(1) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of Defendants up to

the value of the forfeitable property described above.

     A TRUE BILL:


     /s/
     FOREPERSON OF THE GRAND JURY


Assistant United States Attorney

3/24/2014 8:32 AM