IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.                          Criminal No. 14-922 JB

GERALD ARCHULETA,

       Defendant.

## **DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT**

    The Defendant, GERALD ARCULETA, by and through his attorney, Todd Hotchkiss, hereby submits his objections to his presentence report (PSR).

    Mr. Archuleta's agreement under Fed. R. Crim. P. 11(c)(1)(C) is to a range of 87-108 months. Given the United States' on-record statements about the relative culpability of codefendant Jasonn Gonzales, who received a sentence of 87 months, and given the United States Probation Office and the United States stipulated to a United States Sentencing Guidelines (USSG) sentencing range for codefendant Gonzales of 108-135 months, Mr. Archuleta must submit these objections.

    Mr. Gonzales pleaded guilty to all 6 charges pending against him.

Five of those six charges were the charges Mr. Archuleta pleaded guilty
to.  On the not only similar charges but identical mutual charges to
which Mr. Archuleta pleaded guilty, Mr. Gonzales was sentenced to
87 months in prison.  Mr. Gonzales also was sentenced to 24 consecutive
months on Count 6.

    The United States made public statements pertaining to its
position on the relative culpability of Mr. Gonzales and Mr.
Archuleta.  The United States previously agreed, after Mr.
Archuleta's change of plea, that

> all of the evidence – computer records of the fictitious
> companies, stolen identities, keys to Post Office boxes,
> charts of the P.O. boxes, lists of the debit cards on which
> Unemployment Insurance (UI) benefits were loaded – was in
> the possession of Defendant Gonzales.  Many of the stolen
> identities were from J & P Plumbing, where the defendant
> worked and had access to personnel files.  Defendant Gonzales
> planned and paid for travel himself and his co-conspirators
> to effectuate the fraud.  The scheme, which lasted more than
> two years, was <u>initiated and orchestrated</u> by Defendant
> Gonzales.  It appears that Defendant Gonzales also received
> the bulk of the proceeds from this UI mail fraud.
>
> (Doc.64 at 1-2)

Mr. Archuleta's involvement in the conspiracy "was far less" than
Mr. Gonzales' involvement. (Doc.64 at 2) The United States
acknowledged that Mr. Archuleta should receive a sentence far less
than Mr. Gonzales on the five mutual counts: "Clearly, Defendant
Gonzales' sentence should be substantially greater to accurately
reflect his criminality." (Doc.64 at 2)  Furthermore, the United

States acknowledged that Defendant Gonzales was educated in college as an accountant, and "was employed as a bookkeeper and accountant at two different companies from 2002 through 2006". (Doc.64 at 2)

The United States Probation Office and the United States agreed that Mr. Gonzales' USSG range was 108-135 month. (Doc.64)  Given that Mr. Gonzales was in criminal history category II, that equates to a USSG total offense level of 30.  The United States Probation Office has calculated Mr. Archuleta's total offense level to be 32.  Mr. Gonzales received a sentence of 87 months, and the lowest Mr. Archuleta can go is 87 months.  Something is objectionable in this case.

The United States Probation Officer responded to Mr. Archuleta's informal objections by denying them:  "The overall scheme is so intricately woven it would be nearly impossible to determine where each defendant's conduct started and stopped." (Addendum to the Presentence Report at 2)  According to the United States in Doc.64, that just is not the case.  According to a review of the evidence, that just is not the case.

The following are specific objections to the PSR:

1. At Paragraph 9, the PSR states that both Defendants Gonzales and Archuleta "did fraudulently obtain" other people's identities and "provided TWC, CDLE and NMDWS with false and fictitious quarterly reports" and "would then apply for UI benefits under such individuals' identities".  Mr.

3

Archuleta objects to these allegations.  Mr. Archuleta did none of those things; those activities were all done by Mr. Gonzales.  In that paragraph, it also alleges "the defendant would report the fictitious address in order to receive debit cards containing UI benefits".  Mr. Archuleta did not report any fictitious addresses; he opened post office boxes in his name. Finally in that paragraph, it is asserted "Gonzales and Archuleta would utilize the monies on the debit cards at for their own personal use and benefit."  While Mr. Archuleta does not deny receiving some benefits (see PSR Paragraph 41), any inference by this statement that Gonzales and Archuleta received anywhere near the same amount of money is completely untrue.  Mr. Gonzales received the lion's share of the proceeds; Mr. Gonzales paid Mr. Archuleta for the opening of the post office boxes and paid Mr. Archuleta's travel costs.

2.  At Paragraph 14, the PSR states "Gonzales and Archuleta filed for UI benefits".  Mr. Gonzales was the defendant who made all of the filings for UI benefits.  Mr. Archuleta was not involved in filing for UI benefits and objects.

3. At Paragraph 32, the PSR states "Gonzales and Archuleta, along with unindicted co-conspirators, used the personal,

4

identifying information of 57 people in the State of New
Mexico, for the purpose of filing fictitious UI claims."
Mr. Archuleta did not use anyone else's personal,
identifying information, and did not file any
fictitious UI claims.  Mr. Gonzales did.

4. At <u>Paragraph 33</u>, the PSR states "Gonzales and Archuleta
filed for UI benefits" with the TWC.  Again, Mr. Archuleta
filed no UI claims for benefits with the TWC.  Mr. Gonzales
did.

5. At <u>Paragraph 43</u>, the PSR states "Gonzales and Archuleta,
along with unindicted co-conspirators, used the personal,
identifying information of 16 people in the State of Texas,
for the purpose of filing fictitious UI claims."  Mr.
Archuleta did not use anyone else's personal, identifying
information, and did not file any fictitious UI claims.
Mr. Gonzales did.

6. At <u>Paragraph 44</u>, the PSR states "Gonzales and Archuleta
filed for UI benefits" with the CDLE.  Again, Mr. Archuleta
filed no UI claims for benefits with the CDLE.  Mr. Gonzales
did.

7. At <u>Paragraph 57</u>, the PSR states "Gonzales and Archuleta,
along with unindicted co-conspirators, used the personal,
identifying information of 48 people in the State of

5

Colorado, for the purpose of filing fictitious UI claims." Mr. Archuleta did not use anyone else's personal, identifying information, and did not file any fictitious UI claims.  Mr. Gonzales did.

8. At <u>Paragraph 58</u>, the PSR stated that unindicted co-conspirator Christina Cardenas claimed that "Archuleta paid for her meals and drinks when they traveled."  Mr. Archuleta denies this allegation.  It is clear that the scheme was initiated and orchestrated by Mr. Gonzales, and he paid for all of the services his co-conspirators rendered for him and for all of their travel costs.

9. At <u>Paragraph 63</u>, the PSR asserted "both Gonzales and Archuleta appear to be aggravating role players in the overall fraud scheme."  Mr. Archuleta had no supervisory, managing or leadership role in the scheme.  Mr. Archuleta opened post office boxes and assisted in approaching other people at Mr. Gonzales' request to enquire if they would like to open post office boxes for Mr. Archuleta.  Also in that paragraph the PSR asserted, "The defendant and his co-defendant were equal organizers and managers of the fraud scheme".  The United States does not think so, according to Doc.64.  Mr. Archuleta was hardly the equal organizer and manager of the fraud scheme, as it was Mr.

Gonzales' fraud scheme with which Mr. Archuleta played an important but minor role and did not organize or manage anyone.  Also in that paragraph the PSR asserted "Gonzales and Archuleta's roles are that of leader and organizer". Mr. Archuleta denies he was a leader or organizer in the scheme. Mr. Gonzales was the leader and organizer.  Also in that paragraph the PSR asserted "Archuleta also exercised management and responsibility over all P.O. Boxes and the assets within the mailboxes."  Mr. Archuleta denies this, and the evidence found in Mr. Gonzales' residence shows this.  There is no evidence that Mr. Archuleta did anything pertaining to the mailboxes but open them for Mr. Gonzales in Mr. Archuleta's name.  There is no evidence Mr. Archuleta "exercised management and responsibility over all P.O. Boxes and the assets within the mailboxes".  For example, in Paragraph 35 of the PSR it is stated that "the postmaster in Embudo, New Mexico, identified Gonzales as the individual who picked up mail from P.O. Box 43, and recalled unemployment letters being the most common type of mail received."  Also, in Paragraph 56 of the PSR it is stated that on May 22, 2012 a search warrant was executed at Gonzales' residence and 8 million pages of documents were found on Gonzales' computer, including "charts of various

7

P.O. Boxes and their usage", and also "Approximately 25 keys to P.O. Boxes involved in the instant offense" were found. No search warrant was even executed at Mr. Archuleta's residence.

10. At <u>Paragraph 71</u>, Mr. Archuleta challenges the use of the inchoate, intended loss of $1,356,461.00 to increase his base offense level by 16 levels. Instead, Mr. Archuleta argues that his base offense level should only be increased by 14 levels to account for the actual loss of $734,123.73. Alternatively, Mr. Archuleta contends that if this Honorable Court uses the intended loss to increase his base offense level, then he is entitled to a three-level reduction for an attempted theft as set out in USSG § 2X1.1(b).

11. At <u>Paragraph 72</u>, Mr. Archuleta respectfully submits that there were only 3 victims of his offense, not more than 50. Application Note 1 to USSG § 2B1.1 defines "victim" only as "any person who sustained any part of the actual loss determined under section (b)(1)"; therefore there are only 3 victims of the fraud, which are the three States involved. Indeed, the PSR at Paragraph 65 states:

> In this case, the Texas Workforce Commission, Colorado Department of Labor and Employment, and New Mexico Department of Workforce Solutions have

submitted documentation to verify the loss suffered by each state, for a total of $804,735.73 as noted in the Offense Conduct.  Declaration of Victim losses were submitted by five individuals noted in the Offense Conduct as victims of identity theft.  Three of the declarations include a request for restitution totaling $73,000.00, none of which was substantiated with documentation or through a credible third party.  Subsequently, the $73,000.00 was not included in the total amount of restitution for which Gonzales and Archuleta will be responsible.

There were only 3 victims.  Mr. Archuleta was not in involved that part of the conduct, Mr. Gonzales was.

12. At Paragraph 73, Mr. Archuleta objects generally to an enhancement of his sentence for the use of sophisticated means under USSG § 2B1.1(b)(10)(C) because that fact substantially overlaps with, and is adequately taken into account by, the loss amount in USSG § 2B1.1(b)(1)(H). Furthermore, as shown by Doc.64 and the facts and circumstances of this case, it was Mr. Gonzales who engaged in the sophisticated means.  Mr. Archuleta opened Post Office boxes in his name.

13. At Paragraph 74, the PSR asserted "the defendant and his co-defendant acquired personal identifiers from individuals by fraudulent means."  Again, Mr. Archuleta did not acquire any personal identifiers from anyone else by fraudulent means.  Mr. Gonzales did.  Also, the PSR in

9

that paragraph states "Once the defendant had the victims'
information he was able to create profiles online and apply
for UI benefits under their individual names."  While the
PSR does not identify which defendant of which it speaks,
Mr. Archuleta denies it was him as he did not obtain or
acquire anyone else's personal identifiers and did not
apply for any UI benefits.  The PSR in that paragraph also
asserts "he would open P.O. Boxes of fraudulent companies
and have employment claims and debit cards submitted to
these addresses."  Mr. Archuleta again denies it was him
as he did not open P.O. Box in any other person's or entity's
name other than his own name.  Mr. Gonzales then used the
P.O. Boxes Mr. Archuleta had opened to claim those as the
addresses of false and fictitious companies Mr. Gonzales
had created.  Also, the PSR in that paragraph asserted "the
defendant's scheme involved unauthorized transfer, or use
of any means of identification to unlawfully produce or
obtain any other means of identification or counterfeit
access and use of computer hardware and software as a means
to create fraudulent identification documents and to
produce or obtain any other means of identification."  Mr.
Archuleta denies doing any of that.  Mr. Gonzales did all
of that, as shown by the contents of Doc.64.  The United

10

States did not even deign to execute a search warrant at
Mr. Archuleta's residence.   There is no evidence of Mr.
Archuleta being involved with this evidence.

14. At Paragraph 76, Mr. Archuleta objects to the 4-level
enhancement for being an organizer or leader of criminal
activity which involved 5 or more participants because this
enhancement substantially overlaps with, and is adequately
taken into account by, the loss amount in USSG §
2B1.1(b)(1)(H), and because he was not an organizer or
leader, as supported by the United States in Doc.64.

15. At Paragraph 82, the PSR asserted that Mr. Archuleta's
total offense level is 32.   Mr. Archuleta objects, as Mr.
Gonzales' total offense level apparently was 30, and Mr.
Archuleta was far less involved that Mr. Gonzales.   See
Objection 17, *infra*.

16. At Paragraph 118, it is asserted that "Based upon a total
offense level of 32 and criminal history category of III,
the guideline imprisonment range is 151 months to 188
months."   Mr. Archuleta objects.   Mr. Archuleta agrees he
is in criminal history category III, and Mr. Gonzales was
in criminal history category II.   The United States in
Doc.64 asserted that Mr. Gonzales "initiated and
orchestrated" the scheme and agreed that Mr. Gonzales

11

offense level was 32 and imprisonment range was 108-135 months.  Even if Mr. Archuleta was equally culpable as Mr. Gonzales, which the United States acknowledged he clearly is not, in criminal history category III his sentencing range would be 121-151 months.

17. On page 34 of the PSR, it is asserted there were approximately 107 victims.  Again, Mr. Archuleta objects and asserted there were 3 victims, the TWC, CDLE and NMWFS. In that same unnumbered paragraph, the PSR asserted that Mr. Archuleta was "obtaining the identifying information of" the alleged individual victims, which, as has been stated multiple times already in these objections, is not true.  Mr. Gonzales did.  Also in that same unnumbered paragraph, the PSR asserted that Mr. Gonzales did "file fictitious unemployment claims", which, as has been stated multiple times already in these objections, is not true. Mr. Gonzales did.  Also in the same unnumbered paragraph, the PSR asserted "defendant was a leader/organizer", which, as has been stated multiple times already in these objections, is not true.  Mr. Gonzales was the leader and organizer, as the United States acknowledged in Doc.64.

18. At page 2 of the Attachment to the PSR, it is stated that "defendant must undergo a risk assessment and/or

psychosexual evaluation and begin participating in sex offender treatment, consistent with the recommendations of the assessment and/or evaluation.  Furthermore, the defendant must submit to clinical polygraph testing and any other specific sex offender testing as directed by the probation officer."  Mr. Archuleta objects.  There is no evidence that any sex offenses were involved in the present crime.  While Mr. Archuleta is a convicted sex offender, he has undergone the necessary assessments and evaluations during that previous sex offense case.  There is no reasonable basis for this condition in this case.  The United States Probation Office responded "there is a nexus based on the defendant's prior conviction and his status as a registered sex offender". (Addendum at 5)  There is no nexus between Mr. Archuleta's prior convictions which caused him to be a registered sex offender and the present case.

19. The United States, while stating it was "nearly impossible to determine where each defendant's conduct started and stopped", has assumed Mr. Archuleta's involvement was something other than what it was to deny all of the objections and to then inequitably assert a higher USSG total offense level for Mr. Archuleta than for

Mr. Gonzales, despite the United States' claims in Doc.64 and a reasonable review of the evidence.  The calculation of Mr. Archuleta's offense level as 32 with a USSG sentencing range of 151-188 months, both higher than the initiator and orchestrator of the scheme, is simply not right and unfair, and a great overstatement of Mr. Archuleta's criminality in the matter.

Respectfully submitted,

/s/ *Todd Hotchkiss*
TODD B. HOTCHKISS
TODD B. HOTCHKISS, ATTORNEY AT LAW, LLC
Attorney for GERALD ARCHULETA
610 Gold Avenue S.W., Suite 228
Albuquerque, New Mexico  87102
Tele. (505) 243-6776
E-mail: Todd@toddhotchkisslaw.com

## CERTIFICATE OF SERVICE

I, Todd Hotchkiss, hereby certify that on February 6, 2015 I electronically filed the foregoing document through the CM/ECF system and that through that system opposing counsel Tara Neda, Assistant United States Attorney, and the United States Probation Officer will be served with a true and accurate copy.

/S/ *Todd Hotchkiss*
TODD HOTCHKISS

14