IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 23 2016

MATTHEW J. DYKMAN
CLERK

| UNITED STATES OF AMERICA, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Cr. No. 14-922 JB |
| GERALD ARCHULETA, | ) |
| Defendant. | ) |

## AMENDED PLEA AGREEMENT[1]

Pursuant to Rule 11, Fed. R. Crim. P., the parties notify the Court of the following agreement between the United States Attorney for the District of New Mexico, the Defendant, Gerald Archuleta, and the Defendant's counsel, Todd B. Hotchkiss:

### REPRESENTATION BY COUNSEL

1. The Defendant understands the Defendant's right to be represented by an attorney and is so represented. The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.

### RIGHTS OF THE DEFENDANT

2. The Defendant further understands the Defendant's rights:

   a. to plead not guilty, or having already so pleaded, to persist in that plea;

   b. to have a trial by jury; and

   c. at a trial:

      1) to confront and cross-examine adverse witnesses,

---

1. This plea agreement has been amended to reflect the 2015 Guidelines Manual's lower offense levels under Sections 2B1.1(b)(1) and (b)(2), and a slightly lower actual loss directly attributable Archuleta's conduct.

        2)       to be protected from compelled self-incrimination,

        3)       to testify and present evidence on the Defendant's own behalf, and

        4)       to compel the attendance of witnesses for the defense.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3.      The Defendant agrees to waive these rights and to plead guilty to Counts 1-5 of the indictment, charging violations of 18 U.S.C. § 1349, Conspiracy; 18 U.S.C. § 1341, Mail Fraud; and 18 U.S.C. § 2, Aiding and Abetting.

## SENTENCING

4.      The Defendant understands that the maximum penalty provided by law for each count is:

    a.      imprisonment for a period of up to 20 years;

    b.      a fine not to exceed the greater of $250,000.00 or twice the pecuniary gain to the Defendant or pecuniary loss to the victim;

    c.      a term of supervised release of up to three years to follow any term of imprisonment.  (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked – even on the last day of the term – and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

    d.      a mandatory special penalty assessment of $100.00 per count; and

    e.      restitution as may be ordered by the Court.

5.      The parties recognize that the federal sentencing guidelines are advisory, and that the Court is required to consider them in determining the sentence it imposes.

6.     The parties are aware that the Court may accept or reject this plea agreement, or may defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report.   Pursuant to Rule 11(c)(5), Fed. R. of Crim. P., if the Court rejects this plea agreement, the Defendant shall have the right to withdraw the Defendant's plea of guilty.

7.     Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including, but not limited to, information about the recommendations contained in this agreement and any relevant conduct under U.S.S.G. § 1B1.3.

### DEFENDANT'S ADMISSION OF FACTS

8.     By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offenses to which I am pleading guilty.   I recognize and accept responsibility for my criminal conduct.   Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offenses to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the indictment that increase the statutory minimum or maximum penalties.   I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

As to Count 1

1. In or about and between the year 2009 and May 2012, both dates being approximate and inclusive, in Santa Fe and Rio Arriba Counties, in the District of New Mexico, and elsewhere, Defendants **JASONN GONZALES** and **GERALD ARCHULETA** did knowingly and unlawfully conspire to use the United States Postal Service to mail and

receive mail of documents and debit cards in furtherance of a scheme to defraud the New Mexico Department of Workforce Solutions (NMDWS), the Texas Workforce Commission (TWC), and the Colorado Department of Labor and Employment (CDLE) of money and property, and to obtain money and property by means of false and fraudulent pretenses, in violation of 18 U.S.C. §1341.

Manner and Means and Scheme to Defraud

2. Defendant **GERALD ARCHULETA** assisted Co-defendant **JASONN GONZALES** in a scheme that fraudulently registered non-existent companies with the NMDWS, the TWC and the CDLE. The scheme included the filing of quarterly reports for those companies which identified claimed employees and their claimed wages, and pay a minimum amount of employers' unemployment insurance (UI) tax.

3. Defendant **GERALD ARCHULETA** knew that, as part of the conspiracy and scheme, Defendant **JASONN GONZALES** provided names, dates of birth and social security numbers of the claimed employees to the NMDWS, the TWC and the CDLE without the knowledge or authorization of the claimed employees, who were real persons.

4. Defendant **GERALD ARCHULETA** knew that, as part of the conspiracy and scheme, Defendant **JASONN GONZALES** would knowingly and intentionally make claims for unemployment insurance benefits in the total potential payment amount of approximately $1,356,461 in the names of the claimed employees of the non-existent companies to the NMDWS, the TWC and the CDLE, without the knowledge or authorization of the claimed employees.

5. It was a further part of the conspiracy and scheme to defraud that the Defendants opened, and caused to be opened, Post Office (P.O.) boxes in New Mexico, Texas and Colorado,

which they provided to the three state workforce agencies as the mailing addresses of the claimed employers and employees.

6. It was a further part of the conspiracy and scheme to defraud that the Defendants caused UI benefit payments to be made to the claimed employees from debit cards, which were mailed via the United States Postal Service and private commercial interstate carriers to the P.O. boxes that were provided to the three workforce agencies as the claimed employees' mailing addresses.

7. It was a further part of the conspiracy and scheme to defraud that the Defendants retrieved the debit cards from the P.O. boxes, and thereafter withdrew the UI benefits at various banks' automatic teller machines (ATMs) in the total amount of approximately $801,848. The amount attributable to P.O. boxes opened by, or caused to be opened by, the Defendant, **GERALD ARCHULETA,** was $719,858.73.

<u>Overt Acts Pertaining to NMDWS in which Defendant Gerald Archuleta was Directly Involved</u>

8. On or about September 24, 2009, the Defendant, **GERALD ARCHULETA,** opened P.O. Box 1356 in Alcalde, New Mexico, which was identified to the NMDWS as the mailing address of Rio Grande Tech Services, a non-existent company.

9. On or about September 24, 2009, the Defendant, **GERALD ARCHULETA,** opened P.O. Box 244 in Santa Cruz, New Mexico, which was identified to the NMDWS as the mailing address of E.A., J. R. and J.D., all three claimed employees of Rio Grande Tech Services, a non-existent company.

10. On or about October 4, 2010, the Defendant, **GERALD ARCHULETA,** opened P.O. Box 6231 in Santa Fe, New Mexico, which was identified to the NMDWS as the mailing address of Northern New Mexico Delivery Company, a non-existent company.

Overt Acts Pertaining to the TWC in which Defendant Gerald Archuleta was Directly Involved

11. On or about October 1, 2010, the Defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, caused P.O. Box 23631 to be opened in Santa Fe, New Mexico, identified to the TWC as the mailing address of J.M., a claimed employee of DBDR, a non-existent company.

12. On or about October 4, 2010, the Defendant, **GERALD ARCHULETA**, opened P.O. Box 6231 in Santa Fe, New Mexico, which was identified to the TWC as the mailing address of J.T., a claimed employee of DBDR, a non-existent company.

13. On or about February 25, 2011, the Defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, caused P.O. Box 43 to be opened in Embudo, New Mexico, which was identified to the TWC as the mailing address of DBDR, a non-existent company.

14. On or about February 25, 2011, the Defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, caused P.O. Box 242 to be opened in Alcalde, New Mexico, which was identified to the TWC as the mailing address of J.H., a claimed employee of DBDR, a non-existent company.

15. On or about October 14, 2010, the Defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, caused P.O. Box 5845 to be opened in Santa Fe, New Mexico, which was identified to the TWC as the mailing address for C.B., a claimed employee of DBDR, non-existent company.

16. On or about January 31, 2012, the Defendant, **GERALD ARCHULETA,** withdrew $800 from a UI debit card issued by TWC in the name of G.J., a claimed employee of Arlington Computer Tech, a non-existent company, from a Chase ATM located in Arlington, TX.

Overt Acts Pertaining to the CDLE in which Defendant Gerald Archuleta was Directly Involved

17. On or about October 4, 2010, the Defendant, **GERALD ARCHULETA**, opened P.O. Box 6231 in Santa Fe, New Mexico, which was identified to the CDLE as the mailing address of C.F., a claimed employee of A to Z Equipment, a non-existent company.

18. On or about February 25, 2011, the Defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, caused P.O. Box 43 to be opened in Embudo, New Mexico, which was identified to the CDLE as the mailing address of A to Z Equipment, a non-existent company.

19. On or about February 16, 2012, the Defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, caused P.O. Box 2403 to be opened in Espanola, New Mexico, which was identified to the CDLE as the mailing address of S.L., a claimed employee of A to Z Equipment, a non-existent company.

As to Counts 2-5

20. In or about and between the year 2009 and May 2012, in the State and District of New Mexico, and elsewhere, the Defendants, **JASONN GONZALES** and **GERALD ARCHULETA,** with intent to defraud, devised a scheme and artifice to defraud and for obtaining money and property under false and fraudulent pretenses, by knowingly filing false claims for unemployment insurance in their names and the names of others with the New Mexico Department of Workforce Solutions, the Texas Workforce Commission, and the Colorado Department of Labor and Employment, in order to receive unemployment insurance (UI) benefits in their names and the names of others to which they were not entitled.

21. For the purpose of executing such scheme and artifice, on or about the dates listed below,

the Defendants, **JASONN GONZALES** and **GERALD ARCHULETA**, caused debit cards and UI claim-related correspondence to be mailed, delivered and received from the United States Postal Service and private commercial interstate carriers, as follows:

| Count | On or About Date | Description | UI Claimant |
|---|---|---|---|
| 2 | January 25, 2011 | Debit Card acct. # 4675540378322227 mailed to P.O. Box 2403, Espanola, NM | T.S., a claimed employee of Northern New Mexico Delivery Company, a non-existent company |
| 3 | February 27, 2012 | Debit Card acct. # 4303269064066951 mailed to P.O. Box 242, Alcalde, NM | J.H., a claimed employee of DBDR, a non-existent company |
| 4 | May 21, 2012 | Determination of Payment of UI Benefits mailed by TWC to P.O. Box 242, Alcalde, NM | L.J., a claimed employee of DBDR, a non-existent company |
| 5 | May 22, 2012 | Statement of Account mailed by TWC to P.O. Box 242, Alcalde, NM | L.J., a claimed employee of DBDR, a non-existent company |

9. By signing this agreement, the Defendant admits that there is a factual basis for each element of the crimes to which the Defendant will plead guilty. The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

### STIPULATIONS

10. The United States and the Defendant stipulate as follows:

    a.    The Defendant and the United States agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that the appropriate sentence in this case is 57-71 months. This agreement takes into account the Defendant's acceptance of responsibility, with no further reduction to occur. The remaining components of the Defendant's sentence, including, but not limited to, any fine or restitution and the length and conditions of supervised release, shall be imposed by the Court after the presentation of evidence and/or argument by the parties.

    b.    If the Court accepts the plea agreement, it must inform the Defendant that the agreed upon disposition will be included in the judgment, and the Court is bound by the terms of the plea agreement once the Court accepts the plea agreement.

    c.    If the Court rejects the plea agreement, the Court must do the following on the record and in open court (or, for good cause, in camera):

        i.    Inform the parties that the Court rejects the plea agreement;

        ii.    Advise the Defendant personally that the Court is not required to follow the plea agreement and give the Defendant the opportunity to withdraw the plea; and

        iii.    Advise the Defendant personally that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the plea agreement contemplated.

## **DEFENDANT'S ADDITIONAL AGREEMENT**

11.    The Defendant understands the Defendant's obligation to provide the United States

Pretrial Services and Probation Office with truthful, accurate, and complete information. The Defendant represents that the Defendant has complied with and will continue to comply with this obligation.

12. Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

## RESTITUTION

13. The parties agree that, as part of the Defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A.

14. In this case, the Defendant agrees to pay restitution in the total principal amount of $719,858.73, for which the Defendant is responsible jointly and severally with the co-defendant, **JASONN GONZALES**, which is immediately payable to the United States District Court Clerk. The Defendant understands that any payment schedule the Court may impose is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The United States Probation Office or, after the Defendant completes any term of supervised release the Court imposes, the United States Attorney's Office for the District of New Mexico may revise the monthly payment amount depending on the Defendant's financial circumstances. No later than July 1st of each year after

sentencing, until restitution is paid in full, the Defendant shall provide the Asset Recovery Unit, United States Attorney's Office, P.O. Box 607, Albuquerque, NM 87103, (1) a completed and signed financial statement provided to the Defendant by the United States Attorney's Office and/or the United States Probation Office, and (2) a copy of the Defendant's most recent tax returns.

15. The Defendant agrees to the imposition of a money judgment against the Defendant in the amount of $719,858.73, representing a portion of the net profit the Defendant derived from the offense charged in Counts 1 through 5 of the indictment, this amount being due at the time of the Defendant's sentencing.

## WAIVER OF APPEAL RIGHTS

16. The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence within 57-71 months, including any fine within the statutory maximum authorized by law, as well as any order of restitution entered by the Court. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver.

## GOVERNMENT'S ADDITIONAL AGREEMENT

17. Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that:

    a. The United States will not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present indictment.

11

18. This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

## VOLUNTARY PLEA

19. The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement and any addenda). There have been no promises from anyone as to what sentence the Court will impose. The Defendant also represents that the Defendant is pleading guilty because the Defendant is, in fact, guilty.

## VIOLATION OF PLEA AGREEMENT

20. The Defendant agrees that if the Defendant violates any provision of this agreement, the United States may declare this agreement null and void, and the Defendant will thereafter be subject to prosecution for any criminal violation, including, but not limited to, any crime(s) or offense(s) contained in or related to the charges in this case, as well as perjury, false statement, obstruction of justice, and any other crime committed by the Defendant during this prosecution.

## SPECIAL ASSESSMENT

21. At the time of sentencing, the Defendant will tender to the United States District Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico 87102, a money order or certified check payable to the order of the **United States District Court** in the amount of $500 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

22. This document and any addenda are a complete statement of the agreement in this

case and may not be altered unless done so in writing and signed by all parties. This agreement is effective upon signature by the Defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this 26th day of February, 2016.

DAMON P. MARTINEZ
United States Attorney

*/s/ Tara C. Neda*

TARA C. NEDA
Assistant United States Attorney
Post Office Box 607
Albuquerque, New Mexico   87102
(505) 346-7274

I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of my client's rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

*/s/ Todd B. Hotchkiss*

Todd B. Hotchkiss
Attorney for the Defendant

I have carefully discussed every part of this agreement with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.

*/s/ Gerald Archuleta*

Gerald Archuleta
Defendant